IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DANIEL FRAZIER                                                                                                           PLAINTIFF

v.                              Civil No. 2:22-cv-02118-PKH-MEF

NURSE RYAN GOODWIN                                                            DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

      This is a civil rights action filed under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable P. K. Holmes, III, Senior United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.  Currently before the Court is the Defendant's Motion for Summary Judgment and Brief in Support, filed on April 3, 2023, and Statement of Indisputable Material Facts, filed on May 10, 2023.  (ECF Nos. 27-28, 37).  Plaintiff filed a Response in Opposition on April 14, 2023.  (ECF No. 30).  Defendant filed a Reply to the Plaintiff's Response on April 21, 2023.  (ECF No. 31).  Plaintiff filed a Statement of Disputed Facts on May 25, 2023.  (ECF No. 39).

### I.    BACKGROUND

      Plaintiff, Daniel Frazier ("Frazier"), filed his Complaint on July 20, 2022.  (ECF No. 1).  Frazier's Complaint alleges denial of medical care while incarcerated in the Crawford County Detention Center ("CCDC") in 2022, where he was incarcerated as a pretrial detainee.  (ECF No. 1, p. 4).  For his claim, Frazier alleges that at the time of his arrest, he was due for a surgery on his left thumb because he had "2 cut tendons and a cut nerve." (*Id*.).  While incarcerated, Frazier claims that the medical department at CCDC removed his stitches but did not schedule his necessary surgery that would allow him to regain use of his thumb. (*Id*.).  Frazier alleges that he gave the CCDC, and specifically Nurse Ryan Goodwin ("Goodwin"), full disclosure of his need

for surgery. (*Id*). Frazier contends that on or about both April 7, 2022, and April 28, 2022, he filed sick call requests in which he requested that his medical records from Baptist Health in Ft. Smith from Doctor Smithson be recovered so that he can be scheduled for his required surgery. (*Id*., pp. 6-7). Frazier states that he was never able to see a doctor and that he never had his surgery scheduled. (*Id*., p. 5). He alleges that can "feel the tendons slowly traveling up his arm" and that he has lost the use of his thumb. (*Id*.).

Frazier proceeds against Defendant Goodwin in both his individual and official capacities. (ECF No. 1, p. 5). Frazier seeks both compensatory and punitive damages for his claim, specifically requesting compensation for "physical pain and suffering," "loss of the use of a limb," and "punitive damages." (ECF No. 1, p. 14).

Defendant Goodwin filed his Motion for Summary Judgment and Brief in Support on April 3, 2023. (ECF No. 27, 28). He argues summary judgment in his favor is appropriate because Defendant was not deliberately indifferent to the Plaintiff's serious medical needs, and that the Plaintiff provided no evidence of a verifiable detrimental effect based on the medical care provided by Defendant. (ECF No. 28, pp. 5-7). On May 9, 2023, the Clerk's Office entered a notice informing Defendant that his Motion for Summary Judgment was deficient because it was not accompanied by a Separate Statement of Facts as required by Local Rule 56.1(1). Defendant filed his Statement of Indisputable Material Facts on May 10, 2023. (ECF No. 37). The Court then entered an Order informing Frazier that he was entitled to file his Separate Statement of Disputed Facts. (ECF No. 38).

Frazier filed his Response in Opposition on April 14, 2023. (ECF No. 30). Frazier emphasizes that the Defendant was aware of his serious medical need, pointing to discovery documents. (*Id*., p. 1). Despite having this information, he argues the Defendant chose to do

2

nothing. He states his initial screening form contained checked boxes regarding his current medical problem of the severed tendon in his thumb. Further, Frazier argues that the exhibits relied upon by the Defendant in showing that the Plaintiff's doctor had been contacted were insufficient, as they were merely internal documents from Nurse Goodwin's office. (*Id*., p. 2). Frazier states that his doctor was never contacted, merely his staff, and that the Defendant never received anything from Baptist Health, such as x-rays, photos, or emergency room notes. (*Id*.). Importantly, Frazier explains that although he was scheduled for janitorial work in the jail, this work was done only with severe pain to his now inoperable thumb. (*Id*., p. 4). Thus, Frazier alleges that the Defendant did not properly regard his need for surgery on his left thumb.

Defendant Goodwin filed his Reply on April 21, 2023. (ECF No. 31). He argues Plaintiff does not provide evidence of a verifiable injury caused by Defendant's care of his hand, misconstrues the evidence, and admits he missed medical appointments for his thumb prior to his incarceration. (*Id*.). Thus, he argues Plaintiff has not provided sufficient evidence to meet his burden of proof. (*Id*.).

Plaintiff filed his Statement of Disputed Facts on May 25, 2025. (ECF No. 39). Here, the Plaintiff argues that he does have evidence of a verifiable injury, that Doctor Smithson at Baptist Health was never personally contacted, that the health clearance for his janitorial duties was hastily finished, and that his janitorial work was only completed by becoming accustomed to the "painful sensations," "numbness," and "stiffness" in his left hand. (*Id*.).

On July 5, 2023, Defendant filed a Motion to Extend the discovery deadline to depose the Plaintiff. (ECF No. 40). Although the motion did not explain why the deposition had not been taken prior to the submission of the Motion for Summary Judgment on the merits, the extension was granted on July 10, 2023. (ECF No. 42).

3

## II.     LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    ANALYSIS

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to a prisoner's serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Frazier must prove that the Defendant

acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Frazier must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id*. (internal citations omitted). Despite this, issues of fact exist when there is a question of whether medical staff exercised independent medical judgment, and whether the decisions made by medical staff

fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub*, 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Here, Frazier clearly meets the objective prong of the deliberate indifference analysis. Frazier has a severed tendon in his thumb, a fact of which is corroborated both by the Plaintiff (ECF Nos. 1 and 30) and the Defendant (ECF No. 28). Further, Frazier has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub*, 638 F.3d at 914. A thumb covered in sutures and bleeding presents an obvious medical need, even to a layperson.[1]

---

[1] Defendant states Plaintiff "will have difficulty meeting the first prong" of the test, but he does not address this statement further in his brief. (ECF No. 28, p. 1).

Defendant argues Plaintiff fails to meet the subjective prong of the deliberate indifference test because he had missed the window for thumb surgery *prior to being incarcerated*, and he has not provided any verifying medical evidence to show the detrimental effect on the prognosis for his thumb caused by Defendant's failure to schedule his surgery. (ECF Nos. 28, 37). He notes that Plaintiff was incarcerated on March 30, 2022, and Defendant spoke with Plaintiff's free-world doctor's office on April 1, 2022. During that discussion, Defendant was informed that Plaintiff had missed "multiple" surgery appointments and had, therefore, already missed his window for surgery on his thumb. (ECF No. 37, p. 1). Defendant emphasizes that he "relied upon the information provided by Plaintiff's doctor and, unfortunately for Plaintiff, that meant he was no longer eligible for surgery." (ECF No. 28, p. 5). He further argues that Plaintiff requested and was granted permission to join the janitorial work detail after being evaluated and cleared for medical staff to perform these duties without restriction. (ECF No. 37, p. 2). He notes that Plaintiff would not have been cleared for the work duty if he did not have a functioning thumb, as that lack would have made the work "quite difficult." (ECF No. 28, p. 6). Finally, he argues Plaintiff has failed to provide any medical or other evidence that he sustained a verifiable detrimental effect from Defendant's actions or inactions. (*Id*.).

In his verified Complaint, Plaintiff argues Nurse Goodwin deliberately disregarded his needs by administering inadequate treatment, namely by refusing to schedule the Plaintiff's surgery that was necessary to regain the use of his thumb. (ECF No. 1, pp. 6-7). Plaintiff notes that the Defendant's records indicate they spoke to his doctor's office, not to his doctor. (ECF No. 30, p. 2). Plaintiff points out that Defendant's exhibits "are in no way records from Dr. Smithson at Baptist Health in Fort Smith," or any other free-world medical records. (*Id*.). They are, instead, merely internal printouts from CCDC. He states that he missed two appointments because he was

7

exposed to and contracted COVID-19, and those missed appointments were documented and approved by Dr. Smithson. (*Id*.). The third appointment was scheduled on a date *after* his arrest. (*Id*., p. 3). Plaintiff argues that the medical staff clearance for janitorial work was a "simple form showing nothing more than recorded vitals and hastily checked sections," and was dated nearly eight months after the incident. By that time, he had been forced to adapt to the lack of thumb function. (*Id*.). He states he has yet to be evaluated by a doctor. (*Id*., p. 3). He acknowledges that he performed his janitorial duties, but states he had to adapt to using four fingers on his left hand and his good right hand. (*Id*., p. 4). He agrees with the Defendant that performing the work without a functioning thumb was difficult — it was also painful. (*Id*.). He further notes that Defendant's wife was, at the time of the incident, responsible for reviewing his requests and pleas for help, and this made getting further evidence difficult. (*Id*., pp. 4-5).

In his Reply, Defendant Goodwin argues that Plaintiff misconstrued several of the exhibits. He further emphasizes that:

> based on conversations with Plaintiff's physician, Plaintiff missed his window for surgery. Neither Nurse Goodwin nor any other medical staff were in a position to make Plaintiff's physician perform surgery. (ECF No. 31 at 1). They also were in no position to question or contradict the determination of Plaintiff's physician.

(*Id*., pp. 1-2).

Defendant argues that Plaintiff was either being disingenuous when he was evaluated for work detail, or disingenuous now regarding his thumb. (*Id*., p. 2). Finally, he argues that Plaintiff's reference to Defendant's wife is a "last-ditch" effort to save his claim, and that Plaintiff's requests "were not concealed, hidden, ignored or minimized." (*Id*., p. 3).

In his Statement of Disputed Facts, Plaintiff argues that medical records were never obtained from Dr. Smithson's office for this case. (ECF No. 39, p. 2-3). Plaintiff provides a copy of the medical release authorization dated May 18, 2023. (*Id*., p. 8). Plaintiff argues that

8

Defendant was in a better position to obtain these records than an inmate and failed to do so. (*Id.*, p. 4).

The party moving for summary judgment has the initial burden to show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Defendant Goodwin has failed to meet that evidentiary burden in this case. The crux of this case is whether Defendant delayed or denied Plaintiff's access to surgery on his thumb until it was too late to perform the surgery, and whether that lack of surgery has resulted in Plaintiff losing function in his thumb. Defendant has emphasized repeatedly that he was entitled to rely upon the information provided by Plaintiff's doctor, and that he was in no position to question or contradict the determination of Plaintiff's physician. Yet, despite Plaintiff providing two medical records releases,[2] the summary judgment record is completely devoid of any medical records from Plaintiff's physician. Instead, Defendant relies only upon a note entered in CCDC records by Defendant himself, which states:

> Called Baptist Ortho and *spoke with staff*. Staff advised that Dr. Smithson said the pt has missed his window for surgery. They advised the pt has missed multiple surgery appointments prior to being incarcerated.

(ECF No. 27-4) (emphasis added).

Thus, Defendant asks the Court to rule upon a summary judgment motion concerning a medical issue without use of any actual pertinent medical records or affidavits from relevant medical personnel. Instead, Defendant asks the Court to rely upon his own representation of an otherwise undocumented and uncorroborated phone conversation. Defendant also points to a health clearance for Plaintiff to do janitorial work as evidence that Plaintiff suffered no verifiable

---

[2] Defendant's own records indicate that Plaintiff signed a release of information which was faxed to Plaintiff's doctor on March 31, 2022. (ECF No. 27-3). This is in addition to Plaintiff signing the medical records release for this case in May 2023. (ECF No. 39 at 8).

lasting harm due to the lack of surgery.  As correctly argued by Plaintiff, this is a cursory one-page form, there is no indication of any actual physical examination, and the document appears to be signed by a nurse rather than a medical doctor. (ECF No. 27-7).  For duty restriction, there is only the repeated signature of the nurse and the abbreviation "W/R."  Defendant has not provided an affidavit from the nurse or any other information to provide further information concerning the work clearance upon which he relies so heavily.  Nor is the identity of the nurse clear from the signature or Defendant's Statement of Facts.

Taking the facts and all reasonable inferences in the light most favorable to Plaintiff, as the Court must, a material question of fact remains as to whether Defendant prevented Plaintiff from receiving thumb surgery within the medically appropriate window of opportunity, and whether that denial adversely affected Plaintiff's medical prognosis for his thumb.

### IV.     CONCLUSION

For the reasons discussed above, it is recommended that the Motion for Summary Judgment by Defendant Ryan Goodwin (ECF No. 27) be DENIED.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 4th day of December 2023.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE